IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01691-EWN-MEH

SHAUN A. BROWN,

     Plaintiff,

v.

THE COLORADO DEPARTMENT OF CORRECTIONS,
JOE ORTIZ, Executive Director, and
ANTHONY A. DECESARO, Grievance Officer,

     Defendants.

---

## RECOMMENDATION ON PENDING DISPOSITIVE MOTIONS

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are Defendant's Motion to Dismiss [Docket #44] and Plaintiff's Motion for

Summary Judgment [Docket #49]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R

72.1.C, these matters have been referred to this Court for recommendation. For the reasons set forth

below, the Court recommends that Defendant's Motion to Dismiss be **granted** and Plaintiff's Motion

for Summary Judgment be **denied**.

I.    **Background**

    A.    **Factual Background**

In 1990, Plaintiff was sentenced to four years imprisonment in the Colorado Department of

Corrections ("DOC") and required to pay restitution in the amount of $130.00. Plaintiff was paroled

in 1993, and one of the conditions of his parole was the requirement to pay the restitution in monthly

installments. On September 13, 1993, the Colorado Board of Parole discharged his parole as follows:

"Having fulfilled the terms governing Parole, and having complied with all the requirements of law

in such case made and provided, it is here by ordered that he/she be discharged from this sentence and commitment effective September 13, 1993." Docket #3, p. 14.

Plaintiff re-offended in 2002, was sentenced to three years imprisonment with the DOC, and was ordered to pay restitution in the amount of $1,895.00. Pursuant to C.R.S. § 16-18.5-106, the DOC withdrew 20% of the funds in Plaintiff's inmate trust account for payment towards the restitution.

This controversy arises from the DOC applying these funds first towards the $130.00 restitution before applying funds to the $1895.00. Plaintiff argues that he was discharged from the requirement to pay the $130.00 in restitution, as evidenced by his release from all conditions of his parole in 1993. In response, Defendants contend that the discharge in 1993 did not include the restitution component of Plaintiff's sentence and conditions of parole. Defendants argue that they are entitled to withdraw 20% of his funds, even for unpaid restitution ordered before the effective date of C.R.S.§ 16-18.5-106.

**B.      Procedural History**

Plaintiff's Amended Complaint seeks relief based on the following claims: (1) due process violation under the Fourteenth Amendment; (2) illegal seizure under the Fourth Amendment; and (3) double jeopardy under the Fifth Amendment. On September 19, 2005, Plaintiff filed a Motion to Add Exhibit Z into Complaint [Docket #5], which was granted. This exhibit is an Order dated August 26, 2005, in Plaintiff's first criminal case ordering that "any funds previously withdrawn from the Defendant's account in regards to 1989 CR 1204 must be restored to the Defendant." Docket #5, p.3. On October 5, 2005, Plaintiff filed a Motion in Support of Default Judgment in his first criminal case due to DOC's failure to restore the funds, as ordered by the state court on August 26, 2005.

Complaint, Exh. X, Dock. #30. The record does not contain the state court's ruling on the Motion for Default Judgment, but on December 7, 2005, Plaintiff filed an Amended Complaint in which he no longer seeks the return of the $130.00.

For the allegedly improper withdrawals from his account, Plaintiff seeks the following relief: (1) reimbursement of all costs; (2) $1,000.00 for each withdrawal of funds applied to the restitution at issue; (3) punitive damages of $10,000.00 for each constitutional claim; (4) monetary damages of $10,000.00 for each constitutional claim; (5) compensatory damages of $10,000.00 for each constitutional claim; (6) mental distress damages of $50,000.00; (7) a fine imposed against Defendants and order implementing new procedures; and (8) an order requiring the IRS to audit CDOC's records to reimburse all prisoners who have suffered similarly to Plaintiff.

## II.     Discussion

### A.     Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) should be granted only if Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). All well-pleaded factual allegations in the Complaint must be taken as true and viewed in the light most favorable to the non-moving party. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Although the Court construes a *pro se* plaintiff's pleadings liberally, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because "a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## B.    Claims Against Defendants In Their Official Capacities

Plaintiff asserts claims against each of the Defendants in their his or her official and individual capacities.  The Eleventh Amendment is a jurisdictional bar to a suit for damages against the State of Colorado, and any of the defendants, in their official capacities, are considered an arm of the state for Eleventh Amendment purposes.  *Will v. Michigan State Police*, 491 U.S. 58, 71 (1989).  Thus, Plaintiff's claims against Defendants, in their official capacities, for damages are barred.  Plaintiff cannot seek recovery of any damages against Defendants in their official capacities, and any such claims should be dismissed under Fed.R.Civ.P. 12(h)(3) and 12(b)(1).

Nonetheless, Plaintiff also seeks injunctive relief.  When a private party sues a state officer for prospective injunctive or declaratory relief from an alleged ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply.  *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see also Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1205 (10th Cir. 2002).  To maintain an action for declaratory or injunctive relief, Plaintiff must establish a substantial likelihood of being injured in the future.  *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).  Based on Plaintiff's Amended Complaint, Defendants have complied with the state court's order to return the funds applied to the first judgment and continue to apply the funds garnished from Plaintiff's trust fund account to only the second judgment.  Under these circumstances, the entry of injunctive relief in Plaintiff's favor would have no effect on Defendants' behavior.  *White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (holding that inmate plaintiff's claims for injunctive relief were mooted by his release from incarceration).  Accordingly, Plaintiff's request for injunctive relief in this lawsuit, as made against the Defendants in either their official or individual capacities, should be deemed moot.

Because neither the damages nor the injunctive relief Plaintiff seeks can be maintained against Defendants in their official capacities, the Court recommends that these claims against Defendants in their official capacities be **dismissed**.

C.    **Claims Against Defendants In Their Individual Capacities**

When a defendant raises the defense of qualified immunity, as in this case, the plaintiff must plead a violation of a clearly established constitutional right.   *Mitchell v. Maynard*, 80 F.3d 1433, 1447 (10th Cir. 1996).  The Court, therefore, must analyze whether the allegations in the Complaint establish a constitutional violation, and if so, whether the constitutional right was clearly established at the time.

1.    **Procedural Due Process**

Plaintiff first claims that Defendants' actions in withdrawing funds from his account and applying the funds to an allegedly discharged debt violated his right to procedural due process. Defendants contend that due process was satisfied by the legislature when it authorized Defendants to remove funds from prisoner trust accounts for monies owed on an outstanding court order. Defendants further contend that only the imprisonment portion of Plaintiff's sentence was discharged.

To determine what process is due Plaintiff, the Court must balance the following factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, as well as the value of any additional procedures; and (3) the Government's interest, including the cost, in the additional procedures. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  While adequate post-deprivation procedures generally can satisfy due process even if no pre-deprivation procedures exist, *id.* at 340-45, a pre-deprivation hearing is

5

required if the deprivation is pursuant to an established state policy or custom. *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989).

Considering these factors, Plaintiff does not have a due process interest in the funds removed from his trust account in this case because Plaintiff would not have retained access to these funds. While Plaintiff generally has a due process interest in the funds that are in his trust account, *Taylor v. Sebelius*, 2006 U.S. App. LEXIS 18450 (10th Cir. July 21, 2006), the funds at issue in this case would still have been applied to the second restitution order.  As Plaintiff admits, Defendants could rightfully apply the monies deducted from his account to the restitution order of $1895.00.  In no event would Plaintiff have enjoyed the use of the funds removed from his account for the first restitution order because the Colorado law would require the funds to deducted for the second restitution order.

In addition, the risk of erroneous deprivation  is not compelling because it can only occur if Defendants remove funds from a prisoner's account based on a court order that is no longer valid. The only additional procedure that could limit this error would be to require a hearing on the validity of the court order before allowing Defendants to remove funds from an inmate trust account.  Yet, even this hearing would provide no benefit to Plaintiff if Defendants determined that the court order was valid, which Defendants did in this case.  Thus, the balancing of these factors does not weigh in Plaintiff's favor.

Moreover, Plaintiff did receive both pre-deprivation and post-deprivation due process. Defendants deducted funds from Plaintiff's trust account based on an outstanding court order. Plaintiff received a pre-deprivation hearing through the criminal court proceedings that established the amount of restitution to be paid.  After the funds were withdrawn from his account, Plaintiff

6

challenged the legitimacy of the deduction, and the validity of the court order, through the grievance process.  Defendants considered this challenge and determined that the discharge did not apply to monetary restitution, only to the term of imprisonment.  Defendants further encouraged Plaintiff to seek assistance from the state court judge in his original case if he believed Defendants' position to be in error.  Plaintiff did so, and the state court judge ordered that funds be returned to Plaintiff.  Thus, Plaintiff sought and received a remedy for his deprivation first through the prison grievance process and second through the state court system.

Plaintiff's argument essentially is that Defendants reached the wrong conclusion in considering his grievances, because they found no legal support for the conclusion that discharge of a sentence included unpaid restitution.  Letter from Anthony DeCesaro, Amended Complaint at 22.  Plaintiff's contention, however, does not address procedural protections afforded him through this process, even though he disagrees with the conclusion.  As such, the Court believes that this post-deprivation process satisfies the procedural requirements of due process.  *Elliott v. Simmons*, 100 Fed. Appx. 777, 779 (10th Cir. 2004) ("[A]lthough Plaintiff possesses a protected property interest in his prison trust account, prison grievance procedures provide sufficient post-deprivation proceedings to satisfy procedural due process and Plaintiff has not alleged a lack of notice.").

### 2.      Substantive Due Process

To the extent that Plaintiff alleges a substantive due process violation, Plaintiff must show that Defendants acted with a degree of outrageousness that is truly conscience shocking.  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  At a minimum, Plaintiff must establish that Defendants acted with "an intent to do harm that is not justified by any government interest."  *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir. 1998).  Even if Defendants applied the deductions to an improper

order of restitution, these actions are not conscience shocking, particularly when Defendants actions are for the purpose of furthering the state's interest in seeking restitution from Plaintiff for his criminal conduct.  *See Anderson v. Kline*, No. 04-3432, 2005 U.S. Dist. LEXIS 1945, *10-*11 (D. Kan. Feb. 10, 2005) ("Deducting outstanding fees and fines from an inmate trust account without a hearing before each deduction does not 'shock the conscience' of this federal judge.  Such conduct cannot be considered as abusive or outrageous.").  The Court, therefore, concludes that Plaintiff has failed to state a viable claim for violation of due process.

### 3.     Fourth Amendment Seizure

Plaintiff alleges that the money withdrawn from his account constitutes an illegal seizure under the Fourth Amendment.  Defendants assert that their actions were lawful under of C.R.S.§ 16-18.5-106, which requires Defendants to deduct a minimum of 20% of the funds in an inmates' trust account to satisfy outstanding court orders.  While Plaintiff contests whether the $130.00 order is still outstanding, he acknowledges the validity of a restitution order for $1895.00.  Even if Defendants could not properly apply the funds removed from Plaintiff's account to the $130.00 order, Plaintiff admits that monies removed from his account can be applied to the $1895.00 order.  Thus, the alleged violation is not that the money was removed from his account, but that it was applied to the wrong order of restitution.  This is akin to a state tort claim for conversion or misappropriation, not an unconstitutional seizure.  *See Hudson v. Palmer*, 468 U.S. 517, 528 (1984) ("That the Fourth Amendment does not protect against seizures in a prison cell does not mean that an inmate's property can be destroyed with impunity. . . . [R]espondent has adequate state remedies for the alleged destruction of his property.").  Under these circumstances, Plaintiff has not established a violation of the Fourth Amendment.

### 4.    Double Jeopardy

The Double Jeopardy Clause protects a person from "multiple *criminal* punishments for the same offense . . . and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (citations omitted).   Plaintiff alleges that Defendants' collection of restitution after his sentence was discharged constitutes a second punishment for the same offense. In response, Defendants contend that they were simply enforcing the court's order for restitution, not imposing a second order.   Notably, Plaintiff never claims to have previously paid the $130.00 in restitution.   Rather, he claims that he is no longer required to pay this restitution because his sentence was discharged.

Regardless of whether Defendants' interpretation of the court's order discharging Plaintiff's sentence is correct, Defendants' actions in attempting to collect the original order of restitution do not constitute the imposition of a second punishment.   *Cf. People v. Lowe*, 60 P.3d 753, 757 (Colo. App. 2002) ("An *increase* in the amount of restitution ordered after sentence has been imposed and the defendant has begun serving it violates double jeopardy protections.") (emphasis added).   They may have acted incorrectly in collecting on the first order, and Plaintiff may have a state claim for conversion.   But Defendants have not imposed a second order of restitution on Plaintiff, particularly when he does not dispute that he never actually paid the original $130.00 in restitution.   *See also Dawson v. Colo. Dep't of Corr. Ex. Rel. Ortiz*, 75 Fed. Appx. 735, 736-37 (10th Cir. 2004) (finding that withdrawing prisoner's funds for restitution under the Colorado Restitution Act even though plaintiff completed the corresponding term of imprisonment did not violate Double Jeopardy). Hence, Plaintiff's claim for double jeopardy must also fail.

5.      No "Clearly Established" Constitutional Violation

For officials to lose their qualified immunity, their conduct must violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Even viewing the facts contained in the Amended Complaint and the record in a light most favorable to Plaintiff, he has failed to demonstrate a viable claim for violation of a constitutionally protected right, and therefore, the individual defendants in this case are entitled to qualified immunity.  *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (failure to make out a violation of a clearly established constitutional right is a failure to satisfy necessary threshold inquiry in determination of qualified immunity claim).  The Court, therefore, recommends that Plaintiff's claims against Defendants in their individual capacities be **dismissed**.

III.     Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendant's Motion to Dismiss [Filed December 19, 2005; Docket #44] be **granted** and that Plaintiff's Motion for Summary Judgment [Filed January 5, 2006; Docket #49] be **denied**.  The Court further RECOMMENDS that this case be **dismissed** without prejudice for Plaintiff to pursue any state law claims in the appropriate forum.  Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[1]

---

[1]  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being

Dated at Denver, Colorado this 25th day of July, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).